**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| RODNEY EUGENE BABBS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 15-00194-HFS |
| vs. | ) | |
| | ) | |
| POLICE OFFICER BRYAN BLOCK, et al. | ) | |
| in his personal and official capacity, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT FOR DAMAGES

Plaintiff, Rodney Eugene Babbs, Jr., by and through his undersigned attorneys, and states

the following as his amended complaint for damages against Defendants Bryan Block, the

Unified Government of Wyandotte County/Kansas City, Kansas, and Kansas City, Kansas Police

Chief Rick Armstrong stating and alleging the following in support thereof:

## PARTIES

1.      Plaintiff Rodney Eugene Babbs, Jr. ("Babbs" or "Plaintiff") was at all relevant

times a resident of Jackson County, Missouri.

2.      Defendant Unified Government of Wyandotte County/Kansas City, Kansas

("KCK") is a governmental entity organized under the laws of the state of Kansas.

3.      Defendant Rick Armstrong ("Chief Armstrong") was a resident of Kansas City,

Kansas ("KCK") and the Chief of Police for the KCK Police Department ("KCKPD") at all

relevant times herein.  He additionally was a policymaker for KCK and KCKPD as the Chief of

Police.  As such, he was responsible for establishing and implementing policy(s) for the

KCKPD. As a policymaker he is also responsible for the training and supervising of KCK police officers, including Defendant Block. He is sued in his individual and official capacity.

4.     Defendant Bryan Block ("Defendant Block" or "Detective Block") was at all relevant times a resident of Kansas City, Kansas and employed as a detective in the KCKPD. He has been sued in his official and individual capacity.

## JURISDICTION AND VENUE

5.     Jurisdiction and venue is proper in this Court as the events giving rise to this action occurred in Jackson County, Missouri.

6.     Defendant KCK has waived sovereign immunity and consented to jurisdiction before this Court by removing this action to federal court, and availing itself to the jurisdiction of this Court to resolve this dispute when it was originally filed in the Circuit Court of Jackson County, Missouri.

7.     Defendants KCK and Chief Armstrong are not protected by any Missouri state immunity laws because Defendant KCK is not a state entity or political subdivision organized under the laws of the state of Missouri.

## FACTS

8.     On March 4, 2011 Plaintiff Rodney Eugene Babbs, Jr. worked at Club 6902 as a security personnel and/or bouncer.

9.     His responsibilities at Club 6902 included checking for weapons, handling monies, and keeping order in the establishment.

10.     Club 6902 prohibited patrons from bringing firearms into the establishment for the safety of its customers, and had a sign posted in the window indicating that firearms were not permitted on the premises.

2

11.     On March 4, 2011, Detective Block entered Club 6902 while concealing and carrying his KCKPD duty weapon in violation of Club 6902's rule prohibiting patrons from bringing guns into the establishment.

12.     On the evening of March 4, 2011, Defendant Detective Block crossed over the state line from Kansas City, Kansas into Kansas City, Missouri and ingested alcoholic beverages at Club 6902 located at 6902 Prospect while wearing the .40 Caliber firearm service weapon entrusted to him by Defendants KCK and Chief Armstrong.

13.     KCK furnished Block with the bullets for his service weapon. Defendant Block was also wearing his KCKPD credentials and holding himself out as a police officer at all relevant times herein.

14.     On March 4, 2011, Detective Block arrived at Club 6902 at around 4:30 pm, and consumed several alcohol beverages over several hours while he was at Club 6902.

15.     Rory Rue ("Rue") was the assistant security manager of Club 6902. On March 4, 2011, Rue discovered that Detective Block was armed with his service weapon while he was in Club 6902 as he received information that Block had flashed his service weapon to patrons of the establishment.

16.     After discovering Detective Block was flashing his service weapon and showing patrons his police credentials late in the evening, Rue approached Detective Block and advised him that firearms were not permitted in Club 6902.

17.     Rue further advised Defendant Block that he needed to place his duty firearm in his vehicle or he would not be allowed in the club.

18.     Defendant Block became angry with Rue and advised him that he could carry and conceal his weapon because he was KCKPD officer and detective and he could have his service weapon on him at all times.

19.     Plaintiff Babbs was nearby when the aforementioned heated discussions between Rue and Block occurred, and listened to the discussions as Block became increasingly angry and upset with Rue about asking him to leave or remove his firearm from the premises, and Block refused to leave or place his KCK duty weapon in his vehicle.  At this time, Defendant Block had been consuming alcohol for several hours.

20.     After Block continued to argue with Rue about leaving the premises where Block refused to leave the premises, Babbs approached Block to assist Rue in removing Block from the premises because he would not put his duty weapon in his vehicle.

21.     Babbs approached Defendant Block and grabbed his arm and began attempting to escort Block from Club 6902 because he refused to leave and/or place his service weapon in his vehicle.

22.     Detective Block resisted, pulled away from Babbs, and began shouting expletives towards Babbs.

23.     Babbs then grabbed Detective Block by the arm and escorted him to the outside of the building and Rue followed Babbs and Block out of Club 6902.

24.     When outside of the Club, Babbs pleaded with Detective Block to "get on" and leave the premises.  Detective Block continued shouting expletives at Babbs in an intoxicated state.

25.     Babbs was feeling threatened by Block and pushed Block away from him, and then turned and started back into the Club.

4

26.     As he was approaching the door of the Club, Babbs turned back and saw Block waving his KCK duty service weapon around in the direction of Rue and Babbs, unnecessarily escalating the situation.  At this point, Rue was standing between Babbs and Block.

27.     Seeing Block waiving his weapon in the air, Babbs feared for the safety of Rue and he rushed Block to protect Rue, an altercation ensued, and two bullets from Block's gun were discharged and struck Babbs in the torso.

28.     Rue then obtained Block's weapon.

29.     At the time he was shot, Babbs was afraid that he was going to die and he was in shock.

30.     After being shot, Babbs called 911 for medical attention.

31.     An ambulance arrived on the scene, and transported Babbs to Research Medical Center to receive medical treatment for his injuries related to the gunshot wounds.

32.     Defendant KCK had a policy, procedure and custom of allowing KCK Detectives to carry their weapons at all times in a concealed manner while off duty, including anywhere while off duty in the Kansas City Metropolitan area.

33.     Defendant KCK had a policy, procedure and custom of allowing KCKPD officer and/or detectives to carry their duty weapons at all times in a concealed manner while off duty and while consuming alcohol.

34.     It is foreseeable that the public or person(s) with whom an off duty KCKPD officer comes in contact may be endangered, or injured if the off duty police officer is carrying his duty weapon while consuming alcohol and becoming intoxicated at an establishment where firearms are not allowed or permitted on the premises and altercation ensues.

35.     Defendants KCK and Chief Armstrong failed to protect the public from foreseeable harm resulting from such a liberal KCKPD policy that allows KCK police officers to carry their weapons in a concealed manner at all times, and allows them to conceal and carry their duty weapons while consuming alcohol.

36.     In light of KCK police officers misusing chattel issued to them outside of jurisdiction in the past, it was foreseeable to KCK and Chief Armstrong that KCK Police Officers might misuse dangerous chattel issued to them while outside of their jurisdiction.

37.     Defendants KCK and Chief Armstrong failed to have a policy in place to control the use of department service weapons and department issued bullets by KCK police officers in off-duty situations.

38.     Defendant KCK and Chief Armstrong failed to have a policy in place to prohibit KCK officers from consuming alcohol while concealing and carrying their entrusted service weapon and department-issued bullets while off duty.

39.     Defendants KCK and Chief Armstrong issued bullets purchased by KCK to KCKPD police officers and detectives to be used in their duty service weapons.

40.     Defendants KCK and Chief Armstrong issued service weapons to Detectives and Police Officers of the KCKPD which the police officers were required to purchase if they wished to be employed at the KCKPD.

41.     Defendants KCK and Police Chief Rick Armstrong distinguish in General Order 1.6 between Service/Duty Firearms, Auxiliary Firearms and other Firearms.

42.     Under General Order 1.6.II.A, Firearms Qualification, all departmental sworn personnel will qualify with firearms that are available for their use. The handgun (including off duty, auxiliary, and back-up handguns) must be qualified twice yearly.

6

43.     Under General Order 1.6.V.A.2.a.(1), personnel that were authorized to carry the 9mm semi-automatics were authorized to switch to and carry the same make of weapon in a .40 caliber upon qualification with the weapon.  Specifically, these firearms were Sig Sauer, Beretta, and Smith and Wesson make.  Prior to any of these firearms being carried for duty use, the Chief had to approve the model.

44.     Under General Order 1.6.V.B.1., authorized .40 caliber, .357 magnum, and 9mm ammunition will be issued by the Firearms instructor, with prior approval by the Chief of Police. Ammunition authorized by the Chief of Police and issued by KCKPD will be the only ammunition utilized for duty firearms.

45.     Under General Order 1.6.V.D.1., Off Duty Firearms and Equipment, all sworn personnel are authorized to equip themselves with firearms which have been approved by the department and with which they have successfully qualified when out in public away from their residence in accordance with state law.

46.     KCKPD and General Order 1.6.V.D.1 gave Officer Block authority to carry a .40 caliber weapon with the department issued bullets when off-duty and he carried his weapon under that authority with him when he crossed over into Kansas City, Missouri on March 4, 2011.

47.     General Order 1.6.V.D.1 did not limit Officer Block to carrying and concealing duty Firearms within the jurisdiction of KCK or within the state of Kansas.

48.     General Order 1.6.V.D.1 did not limit Officer Block from carrying and concealing duty Firearms while consuming alcohol while off duty.

49.     General Order 1.6.V.D.1 required Officer Block to carry only duty Firearms with which he has qualified while off-duty, which included the .40 Caliber weapon and department-issued bullets he was carrying on March 4, 2011, and with which he injured Plaintiff.

50.     Officer Block carried and concealed his duty Firearm on March 4, 2011, with the full sanction, directive and authority of his employer, Defendants KCK and Chief Armstrong, in his official capacity.

51.     The .40 caliber bullets issued by KCKPD to Defendant Block were a dangerous chattel that could cause serious harm or injury to those whom come in contact with said bullets.

52.     Defendants KCK and Chief Armstrong either knew or should have known that the bullets issued to Detective Block were dangerous chattel and could injure or harm people when an officer is concealing and carrying his duty service weapon and department-issued bullets while consuming alcohol.

53.     Defendants KCK and Chief Armstrong either knew or should have known that Defendant Block had a dangerous propensity to cause bodily or harm to others if not controlled.

54.     Defendants KCK and Chief Armstrong did not have any written policy or directive that prohibited KCK police officers from concealing and carrying their service weapons off-duty while consuming alcohol.

55.     Defendants KCK and Chief Armstrong did not have any written policy or directive that advised officers of their responsibilities when concealing and carrying an officer's duty weapons outside the jurisdiction of KCK or the state of Kansas.

56.     Defendants KCK and Chief Armstrong condoned KCK police officers consumption of alcohol while concealing and carrying their service weapons off duty by failing to institute a policy to prohibit such conduct.

57. Under Missouri law, adopting Restatement (Torts) Second, §317, Defendants KCK and Chief Armstrong had an affirmative duty to ensure that employees do not misuse chattel which they have provided and entrusted to them, including Defendant Bock, when they are off duty.

58. Restatement (Torts) Second §317 imposes a duty on a master to exercise his authority over his servants to prevent them from misusing chattel he entrusts to them as his servants.

59. The .40 caliber department-issued bullets issued and entrusted to Defendant Block by Defendants KCK and Chief Armstrong for use in his KCKPD duty service weapon are a dangerous instrumentality.

60. Defendants KCK and Chief Armstrong entrusted the .40 Caliber duty Firearm, the .40 Caliber Bullets, and the KCKPD Badge to their servant, Detective Bryan Block, whom misused the aforementioned property in a negligent manner on March 4, 2011, and Plaintiff was injured as a result.

61. Defendants KCK and Chief Armstrong did not exercise their authority to ensure that Detective Block did not misuse chattel entrusted to him as a servant.

62. Defendants KCK and Chief Armstrong failed to supervise and/or train Defendant Block to ensure he would not use the entrusted service weapon and department-issued bullets while consuming alcohol and/or entering nightclubs in which they were prohibited.

63. Defendants KCK and Chief Armstrong failed to supervise and/or train Defendant Block to comply with business owners' or club owners' policies and rules prohibiting carrying firearms and bullets into their establishments even when carrying entrusted concealing and carrying duty firearms and department-issued bullets under department authority.

9

64. Defendants KCK and Chief Armstrong failed to supervise and/or train Defendant Block that, despite its authorization to carry and to conceal his department entrusted service weapon and department-issued bullets, he had no authority as a police officer in foreign jurisdictions.

65. Defendants KCK and Chief Armstrong failed to supervise and/or train Defendant Block on the use of deadly force with his service weapon and department-issued bullets.

66. Defendants KCK and Chief Armstrong failed to supervise and/or train Defendant Block to prohibit the consumption of alcohol when carrying and concealing his service weapon and department-issued bullets pursuant to department authority.

67. Defendants KCK and Chief Armstrong failed to supervise and/or train Defendant Block on any department expectations and/or restrictions relating to 18 U.S.C. §926B(b) when concealing and carrying his entrusted service weapons and department-issued bullets.

68. At the time of the altercation at Club 6902 where Plaintiff was injured, Defendant Detective Block was going through a divorce.

69. The divorce was emotionally challenging and destabilizing to Defendant Block.

70. Upon information and belief, Detective Block had been regularly consuming excessive amounts of alcohol as a coping mechanism for dealing with the emotional instability caused by his divorce.

71. Supervisors and fellow Detectives were aware of the emotional troubles Defendant Block was experiencing with the divorce and that he was consuming excessive amounts of alcohol to deal with his emotional instability related to his divorce.

72. Defendant Block had been disciplined for use of excessive force prior to shooting and injuring Plaintiff Babbs.

73.     Defendant KCK and Chief Armstrong had no mandatory reporting or safety procedures for an officer who was experiencing serious emotional difficulty.

74.     Defendants KCK and Chief Armstrong did not have any safety procedures related to officer's use of the duty weapon while off duty when an officer is emotionally unstable.

75.     As a direct and proximate cause of the acts and omissions of Defendant Block mentioned above, plaintiff sustained serious, life-threatening and permanent injuries, and he will continue to suffer from these injuries in the future.

76.     As a direct and proximate cause of the acts and omissions of Defendant Block mentioned above, Plaintiff Babbs has incurred and will continue to incur medical treatment and medical expenses, permanent injuries, lost wages, severe pain, suffering and mental anguish.

## COUNT I
## NEGLIGENCE
## DEFENDANT BLOCK

77.     Plaintiff incorporates by reference all previous paragraphs as though fully set forth herein.

78.     Defendant Block had a duty to carry his KCKPD duty service weapon in a manner that would not unreasonably endanger the public or others, including Plaintiff.

79.     Defendant Block had a duty to not to carry and conceal his duty service weapon while consuming alcohol.

80.     Defendant Block had a duty to abide by the rules of Club 6902 when visiting the establishment and consuming alcohol, including the rule prohibiting patrons from bringing firearms into the establishment, which was posted in the window of Club 6902.

81.    Defendant Block breached these duties and was negligent when he carried his weapon into Club 6902 on March 4, 2011 when he was prohibited from bringing a firearm into the establishment.

82.    Defendant Block breached these duties and was negligent when he carried his duty weapon into Club 6902 and began consuming alcohol while having his service weapon on his person.

83.    Defendant Block breached these duties and was negligent when he carried his weapon into Club 6902 on March 4, 2011 while he was consuming alcohol, and started flashing his duty weapon and badge to other patrons of the establishment.

84.    Defendant Block breached these duties when he consumed alcohol in excess and refused to leave the premise when he was ordered to leave by Plaintiff and Rue after it was discovered he was carrying his duty weapon inside Club 6902 in violation of Club 6902's prohibition of firearms in its establishment.

85.    Defendant Block breached these duties when he consumed alcohol in excess and refused to leave Club 6902 after he was advised that weapons were not allowed or permitted in Club 6902 by Rue and Plaintiff.

86.    Defendant Block breached these duties and was negligent when he refused to leave Club 6902 while wearing his KCKPD service weapon and bullets, and in an intoxicated state becoming angry, requiring Rue and Plaintiff to escort him from the premise.

87.    Defendant Block breached these duties when he began waving his gun negligently in the air in an intoxicated state, and negligently escalated the situation when it was not necessary as Rue and Plaintiff were merely attempting to escort Defendant Block outside of the establishment.

88.     Defendant Block's negligent acts and omissions mentioned above directly and proximately caused or contributed to cause plaintiff sustain bodily injury and damages.

89.     Defendant Block's negligent acts mentioned above directly and proximately caused or contributed to cause Plaintiff to sustain damages including but not limited to, past and future medical treatment and expenses, lost wages, permanent injuries, and past and future pain, suffering and mental anguish.

**COUNT II**
**NEGLIGENCE/ RECKLESSNESS**
**DEFENDANT BLOCK**

90.     Plaintiff incorporates by reference all previous and subsequent paragraphs as though fully set forth herein.

91.     Defendant Block had a duty to use his duty service weapon in a manner that would not unreasonably endanger or harm the public or others, including Plaintiff.

92.     Defendant Block had a duty to not to carry and conceal his duty service weapon while consuming alcohol.

93.     Defendant Block breached this duty when he negligently carried his weapon into Club 6902 on March 4, 2011 in violation of Club 6902's policy prohibiting weapons in the establishment, and began consuming alcoholic beverages while having his duty weapon on his person.

94.     Defendant Block breached these duties when he negligently discharged his KCKPD duty weapon intoxicated state and injured Plaintiff after a confrontation began outside of the Club on March 4, 2011.

95.     Defendant Block's act of discharging his duty weapon and shooting Plaintiff while in an intoxicated state was unjustified, negligent, careless, and/or in reckless disregards of Plaintiff's rights.

96.     Defendant Block's negligent, careless and reckless conduct directly and proximately caused or contributed to cause Plaintiff to sustain permanent bodily injury and damages.

97.     Defendant Block's negligence, carelessness, and recklessness directly and proximately caused or contributed to cause Plaintiff to sustain past and future permanent injuries, medical treatment and expenses, lost wages, and severe pain, suffering and mental anguish.

98.     Defendant Block's actions were careless, reckless, wanton, and in conscious disregard of Plaintiff Babbs' rights, and he is entitled to punitive damages as a result.

**WHEREFORE** Plaintiff prays that this Court enters verdict and judgment in his favor and against Defendant Block in amount in excess of the jurisdictional minimum of $25,000.00; for compensatory damages, for punitive damages, for his costs, pre-and-post judgment interest as allowed by law, and for such further relief as this Court deems just and proper.

## COUNT III
## NEGLIGENT SUPERVISION AND TRAINING
DEFENDANTS KCK AND CHIEF ARMSTRONG

99.     Plaintiff hereby incorporates by reference all previous and subsequent paragraphs as though fully set forth herein.

100.    Defendants KCK and Chief Armstrong are provided the authority to control how and when KCKPD officers and detectives, including Detective Block, can conceal and carry their duty weapons when off duty.

14

101.    Defendants KCK and Chief Armstrong had a legal duty to protect the public against unreasonable risks of harm in training and supervising officers in the use of their duty weapons when they are on duty and when they are off duty if they permit them to conceal and carry their duty weapons while off duty.

102.    Defendants KCK and Chief Armstrong (hereinafter collectively "Defendants") failed to have a policy in place to control the use of department entrusted firearms and depart-issued bullets off duty.

103.    It was reasonably foreseeable that the failure to have a policy in place to control the use of entrusted duty firearms and bullets for officers while in off-duty situations would result in foreseeable harm.

104.    Defendants KCK and Chief Armstrong had a duty to control the use of police department entrusted duty firearms and service weapons and bullets for its police officers when officers are off duty.

105.    Defendants KCK and Chief Armstrong had a duty to use reasonable care to control their officers and ensure their officers do not use their service weapons and department-issued bullets in a unreasonable manner that would injure or harm the public while carrying their duty service weapons off duty.

106.    Defendants KCK and Chief Armstrong failed to control the use of police department entrusted duty firearms and department-issued bullets when KCKPD officers and/or detectives conceal and carry their duty weapons while they are off duty.

107.    Defendants KCK and Chief Armstrong had a duty of reasonable care to control Defendant Block to prevent him from misusing entrusted KCKPD duty firearm and department-

issued bullets when he was concealing and carrying his duty weapon and department-issued bullets off duty.

108.     Defendants KCK and Chief Armstrong failed to use reasonable care to control and/or train and/or supervise Defendant Block to prevent him from misusing department entrusted KCKPD duty firearms and department-issued bullets.

109.     Defendants KCK and Chief Armstrong had a duty to train Defendant Block on how it expected him to use department entrusted KCKPD duty firearms and bullets when concealing and carrying out of jurisdiction and off-duty.

110.     Defendants KCK and Chief Armstrong had a duty to train Defendant Block that he was not to consume alcohol when concealing and carrying entrusted KCKPD duty firearms and department-issued bullets while off duty.

111.     Defendants KCK and Chief Armstrong had a duty to train Defendant Block on how it expected him to use department entrusted firearms and department-issued bullets when concealing and carrying the entrusted KCKPD approved duty weapon and bullets while off duty.

112.     Defendants KCK and Chief Armstrong failed to train Defendant Block on how it expected him to use department entrusted KCKPD approved duty firearms and bullets when concealing and carrying out of jurisdiction and off-duty.

113.     Defendants KCK and Chief Armstrong had no general order or rules prohibiting officers from carrying and using entrusted KCKPD approved duty weapons and department-issued bullets while consuming alcohol off duty.

114.     Defendants KCK and Chief Armstrong failed to train Defendant Block to abstain from consuming alcohol while concealing and carrying the entrusted KCKPD approved duty weapon and bullets.

115.     Defendants knew or had reason to know that officers would carry their service weapons when off duty, but failed to have any policy in place that prevented officers from carrying their service firearms when consuming alcohol.

116.     Defendants knew or should have known that Defendant Block was incompetent by reason of his recklessness, history of excessive force, his emotional instability and excess alcohol use stemming from his divorce.

117.     Defendants KCK and Armstrong's failures mentioned above constitute negligence.

118.     Defendants KCK and Chief Armstrong's negligence directly and proximately caused or contributed to cause Plaintiff Babbs to sustain permanent bodily injury and damages.

119.     Defendants KCK and Armstrong's negligence, carelessness, and recklessness directly and proximately caused or contributed to cause Plaintiff to sustain past and future permanent injuries, medical treatment and expenses, lost wages, and severe pain, suffering and mental anguish.

**WHEREFORE** Plaintiff prays that this Court enter a verdict and judgment in his favor against Defendants KCK and Armstrong, in amount in excess of the minimum jurisdictional limit of $25,000; for compensatory damages, for punitive damages, for his costs, pre-and-post judgment interest as allowed by law, and any other relief the Court deems just and proper.

<u>**COUNT IV**</u>
<u>**NEGLIGENT ENTRUSTMENT**</u>
DEFENDANTS KCK AND CHIEF ARMSTRONG

120.     Plaintiff hereby incorporates by reference all previous and subsequent paragraphs as though fully set forth herein.

17

121.     Defendants KCK and Chief Armstrong had a duty to protect the public from reasonably foreseeable harm by a third party from a dangerous instrumentality over which it had a right of control, supervision, or entrustment.

122.     Defendants KCK and Chief Armstrong had a duty to make sure that dangerous instrumentalities entrusted to its officers, including department approved duty weapons and department-issued bullets would not be misused or used in an unreasonable manner that could endanger or harm the public when entrusted to its officers.

123.     Defendants KCK and Chief Armstrong had a duty to establish a policy where it prohibited KCK officers to carry and conceal their duty weapons and department-issued bullets while consuming alcohol off duty.

124.     Defendants KCK and Chief Armstrong entrusted their officers, including Defendant Block, to carry and conceal their duty firearms and department-issued bullets on their person while off-duty and outside of their jurisdiction.

125.     Defendants KCK and Chief Armstrong breached their duties by failing to prevent Defendant Block from misusing the entrusted KCKPD approved duty weapon and department-issued bullets while off duty.

126.     Defendants KCK and Chief Armstrong breached their duties by failing to train Defendant Block on the proper use of his service weapon when concealing and carrying out of jurisdiction and off-duty.

127.     Defendants KCK and Chief Armstrong breached these duties when they permitted and authorized its officers, including Defendant Block, to carry and conceal their duty weapons and department-issued bullets off duty while consuming alcohol.

128.     Defendants had the right of control, supervision, and entrustment over the .40 Caliber Firearm service weapon, and specifically the .40 Caliber department-issued bullets entrusted to Defendant Block, which caused or contributed to cause injury to Plaintiff on March 4, 2011.

129.     At the time Defendant Block was entrusted with the .40 Caliber Firearm service weapon and .40 Caliber department-issued bullets by Defendants KCK and Chief Armstrong, he was incompetent by reason of his pattern of recklessness behavior, history of excessive force, and emotional instability and alcohol abuse stemming from his divorce.

130.     At the time Defendant Block was entrusted with the .40 Caliber Firearm service weapon and the .40 Caliber department-issued bullets by Defendants KCK and Chief Armstrong, he was incompetent by reason of being intoxicated after consuming several alcoholic beverages.

131.     Defendants KCK and Chief Armstrong knew or should have known of Defendant Block's incompetence.

132.     Defendants KCK and Chief Armstrong knew or had reason to know that Defendant Block was likely to use the .40 Caliber Firearm service weapon and .40 Caliber department-issued bullets in a manner involving unreasonable risk of physical harm to himself and others when they allowed KCKPD officers, including Block, to carry and conceal their weapons while consuming alcohol off duty.

133.     Defendants KCK and Chief Armstrong entrusted the .40 Caliber Firearm service weapon and .40 Caliber department-issued bullets to Defendant Block.

134.     Defendants failed to protect the public, specifically Plaintiff, from reasonably foreseeable harm caused by a third party, namely, Defendant Block by failing to adequately exercise its right of control, supervision, and entrustment over the .40 Caliber Firearm service

weapon and the .40 Caliber department-issued bullets from Defendant Block when he was consuming alcohol.

135.    Defendant Block believed that he could carry his .40 Caliber service weapon and .40 Caliber department issued bullets entrusted to Defendant Block by Defendants KCK and Chief Armstrong while consuming alcohol as Defendants KCK did not have any policies against such conduct.

136.    At all relevant times, including on March 4, 2011, Defendant Block while consuming alcohol did carry and conceal his duty service weapon with department-issued bullets that were entrusted to him by Defendants KCK and Armstrong, when he negligently and carelessly fired his duty weapon with the department-issued bullets and injured Plaintiff.

137.    Defendants KCK and Chief Armstrong condoned the conduct of Defendant Block by failing to prevent or require KCK police officers, including Defendant Block, not to carry or use his service weapon and bullets while consuming alcohol.

138.    Defendants were negligent in their failures to properly train and supervise KCK police officers, including Defendant Block, and exercise the appropriate level of control over its officers' use of their duty weapon and bullets while off-duty when allowing them to conceal and carry their duty weapons and bullets.

139.    Defendants KCK and Armstrong's negligence in conjunction with the negligence of Block directly and proximately caused or contribute to cause Plaintiff permanent injuries and damages.

140.    Defendants KCK and Armstrong's negligence in conjunction with the negligence of Block directly and proximately caused or contribute to cause Plaintiff to sustain past and

future permanent injuries, medical treatment and expenses, lost wages, and severe pain, suffering and mental anguish.

   **WHEREFORE** Plaintiff prays that this Court enters a verdict and judgment in his favor against Defendants KCK and Armstrong in an amount in excess of the jurisdictional limit of $25,000.00; for compensatory damages, for his costs, pre-and-post judgment interest as allowed by law, and any other relief the Court deems just and proper.

Respectfully submitted,
THE LAWLER FIRM, LLC

By:   /s/ Christopher J. Lawler
      Christopher J. Lawler MO# 52802
      104 W. 9th St., Suite 205
      Kansas City, Missouri 64105
      Phone:  (816) 912-4700
      Fax:  (866) 567-9151
      Email: chris@lawlerfirmllc.com

      AND

By:   /s/ James H. Scott
      James H. Scott MO# 48380
      324 E. 11th St., Suite 1706
      Kansas City, Missouri 64106
      Phone: (816) 221-3365
      Fax: (816) 221-4025
      Email: jslaw1968@aol.com
      ***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I certify that on August __, 2015, I electronically filed this Amended Petition with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Henry E. Couchman Jr. #12842
Unified Government of Wyandotte
County/Kansas City, Kansas
Legal Department
701 N. 7th Street, Suite 961
Kansas City, Kansas 66101
P: (913) 573-5060
F: (913) 573-5243
Email: hcouchman@wycokck.org

And

Ryan B. Denk MO #58119
Teresa Mata, MO #50703
Gregory Goheen, MO #64531
MCANANY, VAN CLEAVE & PHILLIPS, P.A.
10 E. Cambridge Circle Drive, Suite 300
Kansas City, Kansas 66103
P: (913) 371-3838
F: (913) 371-4722
Email: rdenk@mvplaw.com
        tmata@mvplaw.com
        ggoheen@mvplaw.com
*Attorneys for Defendants Unified Government*
*of Wyandotte County/Kansas City, Kansas and Rick Armstrong*

Carl E. Cornwell, #9049
Cornwell & Vokins
142 N. Cherry Street
Olathe, Kansas 66061
P: (913) 254-7600
F: (913) 254-7602
Email: carlcornwell@cornwellvokins.com
*Attorney for Defendant Bryan Block*

/s/ *Christopher J. Lawler*
Christopher J. Lawler