IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| RODNEY EUGENE BABBS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-00194-CV-W-HFS |
| | ) | |
| BRYAN BLOCK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

In this personal injury case, defendants, Unified Government of Wyandotte County/Kansas City, Kansas "KCK" and Rick Armstrong, Chief of Police for the Kansas City, Kansas Police Dept. "KCKPD," (sometimes collectively referred to as the "KCK defendants") have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The dispositive issue for me is comity, that is, whether Kansas governmental immunity law should be applied when the alleged injury occurred in Missouri.

Factual and Procedural Background

On March 4, 2011, plaintiff, Rodney Eugene Babbs, Jr., worked at Club 6902 located on Prospect in Kansas City, Mo. in a security capacity, checking patrons for weapons, handling monies, and keeping order in the Club. (Second Amended Complaint: ¶¶ 1-2). Notwithstanding the Club's prohibition against bringing firearms into the Club as stated on signage in the window, defendant police officer Block entered the Club while off-duty, carrying his KCKPD issued .40 caliber duty weapon. (Id: ¶¶ 10-12). Block consumed several alcohol beverages. (Id: ¶ 14).

1

Late in the evening, Rory Rue, the assistant security manager, received information that Block had flashed his service weapon and police credentials to patrons at the Club. (Id: ¶ 15). Rue advised Block that firearms were not permitted in the Club and that the weapon must be placed in Block's vehicle or he could not remain in the Club. (Id: ¶¶ 16-17). Block became angry and refused to leave, and plaintiff Babbs approached to assist Rue in removing Block from the Club. (Id: ¶¶ 18-20). Plaintiff grabbed Block's arm, and followed by Rue, escorted Block out of the Club. (Id: 21-24). As plaintiff turned to return to the Club, he saw Block waving his weapon in the direction of plaintiff and Rue; plaintiff and Block got into a physical altercation and two bullets discharged from Block's weapon striking plaintiff in the torso. (Id: ¶¶ 26-27). Rue retrieved Block's weapon, and plaintiff was transported by ambulance to Research Medical Center for treatment of his wounds. (Id: ¶¶ 28-31).

On March 1, 2012, plaintiff filed claim notice pursuant to K.S.A. 12-105b with the Unified Government of Wyandotte County and City of Kansas City, Kansas. (Notice of Removal: Exh. A). On January 16, 2015, plaintiff commenced this action in the Circuit Court of Jackson County, Missouri. (Doc. 4).

On March 18, 2015, the defendants removed the action to this court and state that jurisdiction is proper pursuant to 28 U.S.C. § 1332 on the basis of complete diversity of citizenship. In August, 2015, plaintiff filed a second amended complaint alleging negligence and recklessness against Block; and in Counts III and IV, negligent supervision and training, and negligent entrustment against the KCK defendants.

Discussion

Liability is sought against the KCK defendants on several negligence theories, for failing to take precautions regarding Block, a police officer with allegedly known emotional problems and perhaps bad judgment relating to firearms. As the supplier of the bullets used by Block, special responsibility is alleged. For present purposes I assume there was culpable negligence that a non-governmental employer would be legally responsible for.

The KCK defendants seek dismissal because of tort liability immunity (at least in Kansas) under the Kansas Tort Claims Act, K.S.A., 75-6101 et seq. Although the Act contains a general waiver of sovereign immunity, the KCK defendants cite several major exceptions, including failure to adopt or enforce personnel policies protecting public safety, except when there is a duty, independent of such policy, to the specific individual injured. K.S.A. 75-6104(d). While the Act may be designed for use within the State, the KCK defendants contend that in an inter-state context it should be used as a matter of comity. Without initially disputing that plaintiff would be barred from recovery against these defendants if the events had occurred in Kansas, plaintiff contends that a Missouri court (which I must follow) would reject comity.

There is very little Missouri law on the comity issue. The principal case cited by the parties is Ramsden v. State of Illinois, 695 S.W.2d 457 (Mo. banc 1985). Ramsden, then residing in Missouri for educational purposes, secured a contract for an internship with a medical center owned and operated by the State of Illinois. The contract was cancelled because of state budgetary problems. Ramsden sued in Missouri and recovered damages in Circuit Court. The Missouri Supreme Court, however, reversed and held that the Missouri courts had no jurisdiction, as a matter of comity, where another State was being sued.

The Ramsden opinion acknowledged that the Supreme Court had ruled there was no constitutional prohibition against a State being sued in another State. Nevada v. Hall, 440 U.S. 410 (1979). The Nevada opinion stated, however, that the States remain free to accord other States "immunity or to respect any established limits on liability." Id at 426. The Ramsden opinion then described comity as " 'one State's entirely voluntary decision to defer to the policy of another.' " The purpose of such an exercise would be " 'perceived as promoting uniformity of decision, as encouraging harmony among participants in a system of cooperative federalism, or as merely an expression of hope for reciprocal advantage in some future case ...' " The Ramsden court also observed that "Illinois did not enter Missouri to conduct any activity" but simply cooperated in a national program making internships available. 695 S.W.2d at 459. Granting comity was a method of helping a sister State "in preserving the integrity of its fisc." Id at 460.

Plaintiff seeks to distinguish Ramsden because it was a contract action rather than a tort claim based on personal injuries. This is not a significant distinction, as there is a subsequent Missouri ruling in a personal injury case, applying comity in a case brought against the District of Columbia. Townsend v. Eastern Chemical Waste Systems et al., 234 S.W.2d 452 (Mo.Ct.App.W.D. 2007). It was there held that a governmental requirement for a prompt notice of claim (six months) would be applied as a matter of comity, and thus barred recovery. See discussion in Part IV of the Townsend opinion.

Plaintiff argues that choice of law rules favor use of Missouri rather than Kansas law. This is obviously true for Block, whose activity occurred in Missouri. It is less compelling for the KCK defendants, whose alleged inaction was confined to Kansas. But assuming choice of law rules would favor using Missouri law, the purpose of comity, as in Ramsden and Townsend,

4

is to override other legal rules in favor of deference to rules otherwise applicable to a foreign governmental body.

Plaintiff's best argument is based on Kansas rulings which arguably invite "border warfare" rather than comity. In Head v. Platte County, 749 P.2d 6 (Kan. 1988) the Kansas Supreme court (over one dissent) allowed litigation against Missouri authorities when they had erroneously processed papers causing the arrest of a Kansas resident in that state on a bad check charge. Missouri governmental immunity arguments were rejected, citing an earlier Kansas decision allowing taxation of waterworks property in Kansas that had been acquired by Kansas City, Missouri. State v. Holcomb, 116 Pac. 251 (1911). While this court cannot choose to follow a Kansas court rather than the Missouri courts in this diversity case, one of the Ramsden grounds for comity was the hope for "reciprocal advantage in some future case." Thus, if Kansas is hostile to comity, Missouri courts are not bound to "turn the other cheek." But again Ramsden helps resolve this problem by noting that Illinois "did not enter Missouri to conduct any activity." When Kansas denied comity in Holcomb, Missouri authorities had intentionally crossed the State line to buy property, and in Head, to cause the arrest of a Kansas resident.

In this case there was no intentional invasion of Missouri by either of the KCK defendants. Instead, as in Ramsden, there was an incidental impact in Missouri of a general program (or lack of program). The KCK defendants did not intentionally cause conduct in Missouri so I am satisfied that even if the Missouri courts would question the Head result, it is not so offensive as to invite retaliation.

While it seems fairly clear from these tidbits of local litigation that comity would be applied by a Missouri court I will look deeper into the question by referring to other persuasive and more detailed authority. A helpful decision is Lee v. Miller County, Arkansas, 800 F.2d

1372 (5th Cir. 1986). That case is no more binding in Missouri than the Head case, but Judge Wisdom discussed the general approach to comity in a persuasive and authoritative manner. See 800 F.3d at 1375-1378. The principal issue added to prior discussion is the point that, while comity overrides other legal principles (such as choice of law) it will not be used if there is a grave violation of the public policy of the forum State.

Superficially there is a serious difference here in result, in that the parties in their briefing assume that Kansas has complete immunity in the context of this case whereas in Missouri the general practice of having insurance opens the possibility of recovery to the extent of coverage. See, e.g., State ex rel. Bd. of Trustees v. Russell, 843 S.W.2d 353, 360 (Mo. banc 1992). But under the Missouri system it is not the State that partially waives immunity by reason of insurance; the State merely authorizes municipalities to take such action. Otherwise, immunity prevails in both States. If the KCK defendants were in Missouri they could decline insurance and enjoy immunity. This is hardly the type of offensive violation of Missouri public policy that would justify me in denying use of the Kansas Tort Claims Act.

For these reasons I believe the Missouri courts, elaborating on Ramsden, would apply comity. It therefore follows that on principles of comity this court must decline to exercise jurisdiction over this tort action brought against the KCK defendants and sustain the motion to dismiss. Ramsden, at 460.

Accordingly, it is hereby

ORDERED that the motion to dismiss filed by the Unified Government of Wyandotte County/Kansas City, Kansas and Rick Armstrong, Chief of Police for the Kansas City, Kansas

Police Department (ECF doc. 35) is GRANTED, without prejudice to any further litigation timely filed in Kansas.[1]

                                                  /s/ Howard F. Sachs
                                                  HOWARD F. SACHS
                                                  UNITED STATES DISTRICT JUDGE

March 10, 2016

Kansas City, Missouri

---

[1] I dismiss rather than apply Kansas immunity law because that is the practice favored by Ramsden. I note, however, that in a requested supplemental briefing plaintiff fails to cite any specific precedent for proceeding against the municipality or the Police Chief.

7