# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| RODNEY BABBS, JR., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:15-cv-0194-DGK |
| BRYAN BLOCK, | ) |
| Defendant. | ) |

## ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

This lawsuit arises from a shooting outside of a nightclub. A bouncer at the club, Plaintiff Rodney Babbs, Jr. ("Plaintiff"), ejected an off-duty police officer, Defendant Bryan Block ("Defendant"), from the premises. Shortly afterward, a scuffle occurred outside the club during which Defendant shot Plaintiff.

Now before the Court is Defendant's Motion for Partial Summary Judgment on Plaintiff's Claims for Lost Wages and Future Damages (Doc. 124). Defendant argues Plaintiff cannot establish that the injuries he sustained from this shooting are the proximate cause of his alleged disability or inability to work. The Court holds that because Plaintiff will be able to present some expert medical and vocational testimony that could establish these gunshots caused, or partially caused, some of Plaintiff's medical problems which are responsible for, or partially responsible for, his inability to work, the motion is DENIED.

That said, at trial, the Court will hold Plaintiff to his burden to prove causation by admissible medical evidence. Plaintiff cannot prove his case solely under the sudden onset doctrine.

## Summary Judgment Standard[1]

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of explaining the basis for its motion, and it must identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). If the movant does so, then the nonmovant must submit evidence demonstrating that there is a genuine issue for trial. *Id.* The court views any factual disputes in the light most favorable to the nonmoving party. *Id.* Decisions concerning credibility, how to weigh the evidence, and what inferences to draw from the evidence, are decisions reserved for the jury, not the judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

When the burden shifts to the nonmoving party, it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Nor can the nonmoving party "create sham issues of fact in an effort to defeat summary judgment." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S 557, 585 (2009).

---

[1] Plaintiff has cited a sixty-six year-old case for the proposition that, "Summary judgment is an *extreme* remedy and should only be used when the truth is quite clear." Sugg. in Opp'n at 27 (Doc. 143) (citing *Traylor v. Black, Sivalls & Bryson, Inc.*, 189 F.2d 213, 216 (8th Cir. 1951)) (emphasis added). The citation is accurate in the sense that it contains such language—"A summary judgment is an extreme remedy, and, under the rule should be awarded only when the truth is quite clear"—and this case has never been explicitly overruled. That said, this citation is no longer good law. This portion of *Taylor* has been superseded by the Supreme Court's decision in *Celotex Corporation v. Catrett*, which held that, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." 477 U.S. 317, 327 (1986). *See Bates v. Hadden*, 576 F. App'x 636, 638 n.3 (noting that in the wake of *Celotex*, statements such as "summary judgment is an extreme remedy which should be sparingly employed" are "unauthorized and should not be followed").

**Undisputed Material Facts**

The Court has limited the facts presented here to those that are not in dispute and relevant to the motion. The Court has also excluded legal conclusions, argument presented as fact, and proposed facts that are not properly supported by admissible evidence. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). The Court has included reasonable inferences from material facts not in dispute and proposed facts the opposing party has not controverted properly. Stating that a document "speaks for itself" does not controvert a statement. *See Kings Pro'l Basketball Club, Inc. v. Green*, 597 F. Supp. 366, 369 (W.D. Mo. 1984) (holding such statements do not set forth specific facts showing there is a genuine issue for trial). The Court treats these and other improperly controverted facts as undisputed. Fed. R. Civ. P. 56(e)(2).

Consequently, the Court finds the relevant, undisputed material facts to be as follows.

On March 4, 2011, Defendant, an off-duty Kansas City, Kansas, Police Detective went to the 6902 Club in Kansas City, Missouri. He brought his service weapon, a .40 caliber Glock handgun, into the club with him. He drank several alcoholic drinks and became intoxicated. When it was discovered he was carrying a gun, he was asked to leave. Defendant refused to leave and began to argue with security. Two bouncers, one of which was Plaintiff, escorted Defendant from the building. Defendant then attempted to re-enter the club. At this point, the parties' accounts sharply diverge, but there is no dispute that a scuffle ensued and that Defendant shot Plaintiff twice.

Plaintiff was taken by ambulance to the emergency room at Research Medical Center ("Research"). He arrived at approximately two minutes after mid-night on March 5, 2011. Plaintiff had been shot two times, with two entrance wounds and two exit wounds. A medical report describes wounds as superficial injuries within the right upper quadrant and right posterior

back.  It also found he had large bullet fragments lodged within his right pectoralis muscle.  The large bullet fragments in his chest were determined to be from a 2006 gunshot wound.  CT scans revealed no evidence of rib fractures, hemopneumothorax, pulmonary contusion, or shockwave injury.  The CT scans indicated both wounds were "through and through" and did not damage the underlying organs.

The Research lab report from that night found Plaintiff had a serum alcohol level of 141 MG/D.[2]  Plaintiff admits he consumed alcohol sometime on March 4th, but maintains he did not consume any additional alcohol after the shooting, so the lab report must be incorrect.  The head of the trauma team who treated Plaintiff, Dr. H. Scott Bjerke, M.D., testified Plaintiff was not clinically intoxicated.  Plaintiff was coherent, he was not slurring his speech, and his eyes did not appear to be bloodshot.

Dr. Bjerke ordered the bullet wounds to be cleaned and bandaged.  He prescribed IV pain medication including Ancif and Fentanyl.  Plaintiff was treated at Research for approximately one hour and forty minutes.  He was then offered admission to the hospital for pain control and wound care, but declined and went home.

On March 6, 2011, Plaintiff returned to the Research emergency room requesting treatment for pain control.  A Research medical record dated March 6, 2011, states, "He was intoxicated at the time of his arrival at the hospital [yesterday]."  It further states "he did not recall what his evaluation had consisted of when he was here, and he was concerned that something was wrong", so he came back.  He was admitted for pain control and was treated for his "acute alcohol intoxication at the time of his presentation yesterday."  After his re-admittance, Plaintiff stayed at the hospital until discharged on March 8, 2011.  During this stay, he was given various pain medications, including morphine, oxycodone, Dilaudid, and Toradol.

---

[2] Dr. Bjerke testified in his deposition that this equates to a blood alcohol content of 0.141.

4

On discharge, Plaintiff had specific questions about returning to weightlifting. The doctor recommended he not do any core activities for the next several weeks until his muscles were less inflamed. He was instructed on wound care and hygiene, told not to drive while taking narcotic pain medications, and to return for follow-up visit. No other physical or medical restrictions were placed on him.

On March 17, 2011, Plaintiff was seen for follow-up care. Dr. Floyd Scott, M.D., aspirated a wound which was not draining correctly. Plaintiff also reported having difficulty sleeping at night, which he attributed to both the pain of the wounds and thinking about the situation over and over. Dr. Scott gave Plaintiff community resources for mental health and encouraged him to seek counseling to help him cope with what he described as an acute stress reaction. Plaintiff never sought mental health treatment.

On March 31, 2011, Dr. Nora Royer, M.D., saw Plaintiff for follow-up care. She noted he reported some burning and numbness in his back, as well as decreased sensation in the back lower right region to the right of his spine. She also noted he was taking Percocet and Flexeril. Because Plaintiff was continuing to complain about numbness, tingling, and nerve pain in his back, she referred him to neurology for evaluation of its cause and treatment. He was not seen by a neurologist.

On May 11, 2011, Dr. Fernando M. Egea, M.D., evaluated Plaintiff in conjunction with a Social Security Disability claim. Dr. Egea saw Plaintiff once for forty-five minutes, and completed a short form opining he had several severe limitations. Dr. Egea stated, among other things, that: Plaintiff would be able to sit, stand, or walk, less than two hours a day in an eight-hour working day; Plaintiff would need to take breaks every hour he worked for fifteen minutes; and Plaintiff would have to lie down at unpredictable intervals twice during an eight-hour day.

Based on Plaintiff's self-reported complaints, Dr. Egea also diagnosed Plaintiff with radiculopathy of the lumbar spine as a result of the March 4 shooting.

A year after the shooting, Plaintiff complained he was still experiencing pain in his low back, as well as pain radiating pain down his right leg. Plaintiff claims that prior to the 2011 shooting, he never experienced any problems or pain in his low back or weakness in his lower extremities.

On September 26, 2012, an administrative law judge with the Social Security Administration ruled Plaintiff had been disabled since March 5, 2011. He found Plaintiff was disabled for a variety of medical reasons, some of which have nothing to do with the 2011 shooting.

Since the 2011 shooting, Plaintiff has continued to complain about pain in his low back near the gunshot wounds, cramping in his abdomen, shooting pain down his right leg, numbness in his toes on his right foot, pain in the left hip, nightmares, fear, and anxiety. He has obtained medical treatment for pain in his lower back as well as continuing pain in his right leg.

On January 5, 2016, Plaintiff sought treatment in the emergency room at Houston Methodist Hospital, and Dr. Syed Abrar, M.D., diagnosed Plaintiff with radiculopathy. The parties dispute the cause of this pain. A note in the hospital's records states:

> The patient presents with pain. The complaints affect the left hip. Context: resulted from an unknown cause . . . The patient has experienced similar episodes in the past, chronically. . . Pt has been having left hip pain since May 2015 when he moved houses. The pain has gradually gotten worse and now he has lower back pain.

Plaintiff's retained medical expert, Dr. Steven Simon, M.D., examined Plaintiff on September 30, 2016. He also conducted a review of his medical records and wrote a separate

6

report dated October 7, 2016. Dr. Simon's reports do not place any physical limitations or restrictions on Plaintiff, nor do they identify any medical restrictions that have been placed on him. Dr. Simon diagnosed Plaintiff with post-traumatic stress disorder ("PTSD"), chronic pain syndrome, radiculopathy, and nerve tract disease.

Plaintiff has also retained an expert in vocational rehabilitation, Mr. Michael Dreiling ("Mr. Dreiling"), and an economic damages expert, Dr. William Gary Baker, Ph.D. ("Dr. Baker"). Neither are medical doctors. Mr. Dreiling will testify that that because of a combination of factors—Plaintiff's lack of any formal academic or vocational training beyond high school, his limited computer skills and inability to type, his history of physically oriented work, and his numerous medical problems (hearing loss, PTSD, chronic pain syndrome, hip and back conditions, the 2006 and 2011 gunshot injuries, etc.)—Plaintiff is realistically unemployable. Dr. Baker will testify about the present value of the income loss to Plaintiff resulting from his alleged inability to work since March 4, 2011.

## Discussion

Defendant argues he is entitled to summary judgment on Plaintiff's claims for lost wages and future damages because Plaintiff cannot show a causal connection between the gunshot wounds he sustained in 2011 and the permanent and total disability he alleges he suffered as a result. Defendant contends Plaintiff lacks expert medical testimony to show the 2011 gunshot wounds rendered him totally disabled.

Plaintiff responds that he can prove causation under both the sudden onset doctrine and Dr. Simon's expert testimony.

Under Missouri law, medical testimony is not always required to prove a causal connection between an event and an injury. *Lidge v. Sears, Roebuck & Co.*, 318 F. Supp. 2d

830, 836 (W.D. Mo. 2004). To illustrate: suppose a wheel on a shopping cart being pushed across a parking lot catches on a drainage grate, causing the cart to spill over and throw a child to the ground. The child starts screaming and grabbing his leg as soon as he hits the ground. If the child is subsequently diagnosed with a broken leg, medical testimony is not required to prove the accident caused the child's broken bone. *Id.* at 837-38 (discussing *Crawford v. Shop'N Save Warehouse Foods, Inc.*, 91 S.W.3d 646, 652 (Mo. Ct. App. 2002)). Under what is known as the "sudden onset" doctrine, a causal connection may be inferred if the injury develops coincidentally with the act and the injury is a visible one, or an injury that as a matter of common knowledge follows the act. *Id.* at 836.

But expert medical testimony is required when an injury is a "sophisticated injury," that is, an injury "which requires surgical intervention or other highly scientific technique for diagnosis, and particularly where there is a serious question of pre-existing disability and its extent, [where] the proof of causation is not within the realm of lay understanding." *Williams v. Jacobs*, 972 S.W.2d 334, 340 (Mo. Ct. App. 1998). In the present case, Plaintiff's alleged injuries are "sophisticated injuries" because they require highly scientific techniques to diagnose, there are other possible causes of some of these injuries (prior gunshot wounds, moving houses, etc.), Plaintiff may have pre-existing medical conditions, and untangling this web of causation requires expertise beyond a lay person's understanding. *See Lidge*, 318 F. Supp. 2d at 836. Plaintiff needs expert medical testimony to establish that the 2011 gunshot wounds caused at least some of the medical problems which made Plaintiff totally disabled or restricted his ability to work.

As discussed in the Court's companion order excluding part of Dr. Simon's testimony, Dr. Simon may not testify that the 2011 gunshots caused Plaintiff's alleged radiculopathy, "four-

8

extremity discomfort," PTSD, or chronic pain syndrome. Dr. Simon may, however, testify that the 2011 gunshots are responsible for the pain felt in Plaintiff's hips and back, and the referred pain felt in his legs. Since Mr. Dreiling's testimony is that Plaintiff's hip and back conditions are one of many factors making him essentially unemployable, the Court holds a jury could find Defendant is at least partially responsible for Plaintiff's present and future inability to work.[3] Accordingly, Defendant is not entitled to summary judgment on this claim.

## Conclusion

For the reasons discussed above, Defendant's motion (Doc. 124) is DENIED.

**IT IS SO ORDERED.**

Date:  June 1, 2017  /s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[3] The degree to which Defendant could be legally responsible, and how the jury should be instructed on this issue, is left for the parties to address in their proposed jury instructions and trial briefs.